UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )
v.                                  )     No.:    3:07-CR-51
                                    )             (VARLAN/SHIRLEY)
JOHNNIE MARTIN,                     )
                                    )
          Defendant.                )

## MEMORANDUM AND ORDER

This matter is before the Court on pro se defendant Johnnie Martin's Motion for

Judgment of Acquittal [Doc. 322]; Motion for New Trial [Doc. 323]; and Supplemental

Motion for Judgment of Acquittal or, in the Alternative, for New Trial [Doc. 374]. The

government has responded in opposition to each of defendant's motions [Docs. 335; 347;

376]. For the reasons that follow, the motions will be **DENIED**.

## I.     BACKGROUND

This criminal action involves a large-scale conspiracy to distribute cocaine, cocaine

base ("crack"), Ecstasy, and marijuana. The second superseding indictment [Doc. 224]

charged defendant Johnnie Martin and five co-defendants with various drug, firearm, and

money laundering violations, as well as conspiring to kill a federal witness.

After defendant's trial was severed from that of his remaining co-defendants, a five

day jury trial was held before the Honorable Thomas W. Phillips, United States District

Judge. After two-and-a-half days of deliberating, the jury was only able to render a partial

verdict; specifically, the jury convicted defendant of Count Five of the superseding indictment, that is, being a felon in possession of a firearm. During two more days of deliberations, the jury indicated to the Court continued deadlock and notified the Court of charges of racism within the jury. After further instruction to continue to attempt to reach unanimity, Judge Phillips found the jury to be hopelessly deadlocked and declared a mistrial on the remaining six counts against defendant Martin.

After Judge Phillips recused himself from retrial of this action, the case was reassigned to the Honorable Thomas A. Varlan [Docs. 317; 320]. Defendant now moves for an acquittal on the partial verdict and alternatively for a new trial on Count Five. In support of his motions, defendant argues that the evidence is insufficient to support a conviction; the manner in which Judge Phillips allowed the jury to continue deliberations, despite initial indications by the jury of potential deadlock, was improper; the prosecutor gave improper "testimony" and made references to things not in evidence; and the prosecutor made inappropriate comments during his closing argument.

II.     ANALYSIS

As an initial matter, the Court notes that defendant's motions are untimely. Rules 29(c) and 33 of the Federal Rules of Criminal Procedure require that any motions for a judgment of acquittal after a jury verdict or for a new trial be filed within 7 days of a guilty verdict. Fed. R. Crim. P. 29(c)(1) ("A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later."); Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded

on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."). Defendant was convicted of Count Five on March 6, 2008, and the jury was discharged on March 10, 2008. Thus, defendant's Motion for New Trial was due on or before March 20, 2008, and defendant's Motion for Judgment of Acquittal was due on or before March 24, 2008. *See* Fed. R. Crim. P. 45(a). Defendant's pro se motions were filed on March 25, 2008. [*See* Docs. 322; 323.]

In a similar case to the one *sub judice*, involving in part motions filed under Rules 29(c) and 33 by a pro se criminal defendant, the Sixth Circuit held, "For a district court to have jurisdiction over a motion under Rule 29 or 33, the movant must comply with the seven-day period of the Rules." *United States v. Emuegbunam*, 268 F.3d 377, 397 (6th Cir. 2001). This is in compliance with the strict construction of Rules 29 and 33 mandated by the Supreme Court. *Id.* The time period may only be extended by the court within that seven-day period, not afterward, absent a showing of excusable neglect. *Id.*; *see also* Fed. R. Crim. Pro. 45(b) (stating that the court may extend the time "before the originally prescribed or previously extended time expires" or "after the time expires if the party failed to act because of excusable neglect"). The *Emuegbunam* court was clear that a defendant's pro se representation does not insulate him from the strict application of this seven-day time period. 268 F.3d at 397-98. The court stated that the date of filing a motion under Rules 29 and 33 is the date the motion is actually filed with the court, not the date upon which a prisoner gives the motion to prison officials for forwarding to the clerk's office as is true in habeas appeals. *Id.* Consequently, as defendant neither moved for an extension of time within the seven-day

period following his conviction nor demonstrated to the Court any basis for excusable neglect, the Court must deny defendant's Motion for New Trial as untimely. However, even were this court to entertain the substance of defendant's motions and supplement, as discussed below, the motions would fail as being without merit.

A.      **Motion for Judgment of Acquittal**

Rule 29(c) of the Federal Rules of Criminal Procedure governs a motion for a judgment of acquittal following a jury verdict or discharge. That rule provides, "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. Pro. 29(c)(2). When reviewing a criminal defendant's motion for a judgment of acquittal, the court "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *accord, e.g.*, *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005); *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). This standard applies equally to circumstantial and direct evidence. *Humphrey*, 279 F.3d at 378. Indeed, "[c]ircumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999) (companion case to *Talley*, 164 F.3d 989)).

To convict defendant of being a felon in possession of a firearm, the jury had to find each of the following elements beyond a reasonable doubt: (1) that defendant was previously

convicted of a crime punishable by a term of imprisonment exceeding one year, (2) that

defendant knowingly possessed the firearm, and (3) that the firearm had traveled in interstate

commerce. *Sawyers*, 409 F.3d at 735. Construing the evidence in the light most favorable

to the prosecution, a rational trier of fact could find all three elements beyond a reasonable

doubt.

First, the first and third elements were not seriously disputed, as defendant stipulated

to his prior felony conviction and testimony demonstrated that the firearm was manufactured

outside of the state of Tennessee. Second, a rational trier of fact could find, based on the

evidence presented by the government, that defendant knowingly was in possession of the

firearm. The Sixth Circuit continues to rely on the explanation of possession articulated in

*United States v. Craven*:

> Possession may be either actual or constructive and it need not be exclusive but may
> be joint. Actual possession exists when a tangible object is in the immediate
> possession or control of the party. Constructive possession exists when a person does
> not have actual possession but instead knowingly has the power and the intention at
> a given time to exercise dominion and control over an object, either directly or
> through others. Both actual possession and constructive possession may be proved by
> direct or circumstantial evidence. It is not necessary that such evidence remove every
> reasonable hypothesis except that of guilt.

478 F.2d 1329, 1333 (6th Cir. 1973) (citations omitted) (quoted in *United States v. Grubbs*,

506 F.3d 434, 439 (6th Cir. 2007). "Proof that the person has dominion over the premises

where the firearm is located is sufficient to establish constructive possession." *United States*

*v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (citation and internal quotations omitted). *But*

*see United States v. Birmley*, 529 F.2d 103, 108-09 (6th Cir. 1976) (noting that proximity to the location where the gun is found alone is not enough to support possession).

As noted by the government, the firearm was recovered from the master bedroom of a residence that defendant shared with a co-defendant. Not only did the lease for that residence bear defendant's name, but the owner of the property also testified that checks for payment of rent were received from defendant's bank account. Finally, several witnesses testified that defendant had personally provided firearms to them, that defendant shared the bedroom in question with his co-defendant, and that they had observed the rifle in question in the bedroom. A reasonable juror could therefore find that the government had proven the second element beyond a reasonable doubt.

Accordingly, based on the evidence presented by the prosecution and viewing such evidence in a light most favorable to the prosecution, a reasonable jury could find that the government proved beyond a reasonable doubt all three elements of the charge of being a felon in possession.

## B.    Motion for New Trial

Alternatively, defendant seeks a new trial on Count Five of the superseding indictment, claiming his conviction was improperly procured. Rule 33 of the Federal Rules of Criminal Procedure provides that, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

**1.      The Court's Charge to the Jury to Continue to Deliberate**

Defendant argues that Judge Phillips "erroneously charged the jury to continue to deliberate after the jury had announced it was hopelessly deadlocked." [Doc. 323 at 1.] Citing the recent Supreme Court opinion in *Snyder v. Louisiana*, 128 S. Ct. 1203 (2008),[1] defendant further argues that following the allegations of racism within the jury, Judge Phillips had a duty to declare a mistrial immediately. [Doc. 323 at 1.] The government in turn contends that defendant's motion should be denied as untimely under Rule 33(b)(2) of the Federal Rules of Criminal Procedure, and that in any event, defendant's motion should be denied under well-settled precedent governing supplemental jury instructions to potentially deadlocked juries. [Doc. 347.]

In giving the jury further guidance as to its deliberations, Judge Phillips utilized the pattern jury instruction regarding a deadlocked jury approved by the Sixth Circuit. *See* Sixth Circuit Pattern Jury Instructions: Criminal 9.04; *see also United States v. Clinton*, 338 F.3d 483, 488 (6th Cir. 2003) (stating a strong preference in the Sixth Circuit for use of this pattern instruction when jury indicates potential deadlock). This charge is given in accordance with the Supreme Court's oft-cited opinion in *Allen v. United States*, 164 U.S. 492 (1896). In *Allen*, the Supreme Court approved the use of supplemental jury instructions

---

[1] In his Motion for New Trial, defendant cites "Gonzales Lopez v. Louisiana decided by the United State [sic] Supreme Court the week 07 March 14, 2008." [Doc. 323 at 1.] The Court interprets this as referring to *Snyder v. Louisiana*, 128 S. Ct. 1203 (2008), decided on March 19, 2008, as *Snyder* was the only case decided by the Court in March 2008 pertaining to juries and to claims of improper racial bias.

charging that jurors have "a duty to decide the case if they [can] conscientiously do so" and that jurors may return to deliberate and "listen, with a disposition to be convinced, to each other's arguments," questioning whether their dissenting opinion is truly based on a reasonable doubt. *Id.* at 501. The Sixth Circuit has recognized that *Allen* and its progeny "establish[] that a criminal defendant being tried by a jury is entitled to an uncoerced and unanimous verdict of that body." *Clinton*, 338 F.3d at 487. The pattern jury instruction employed by Judge Phillips and preferred by the Sixth Circuit accomplishes this goal by urging the jury to attempt to reach unanimity without unduly coercing them. Indeed, if after a short time of deliberating a jury believes itself to be deadlocked, a court "incontestably [has] the authority to insist that they deliberate further." *Lowenfield v. Phelps*, 484 U.S. 231, 238 (1988). There was therefore no error in Judge Phillips instructing a jury that had only been deliberating a short time to return and attempt to reach a unanimous agreement.

Moreover, the court notes that defendant did not object to the use of the pattern *Allen* charge despite being given the opportunity to do so. Consequently he waived any later review of the use of the instruction, save for plain error. *See* Fed. R. Crim. Pro. 30(d); Fed. R. Crim. Pro. 52(b). As discussed above, however, the use of the instruction given by Judge Phillips is not only accepted, it is preferred, and there was therefore no error in having further instructed the jury regarding potential deadlock.

Finally, Judge Phillips had no duty to declare a mistrial when notified of potential charges of racism within the jury room. As noted by the government, when first made aware of these charges, Judge Phillips instructed the jury that race should have no bearing on the

8

decision-making process and instructed the jury to continue deliberating. This adequately guarded against any prejudice to the defendant. Further, as the Supreme Court opinion cited by defendant applies to the voir dire process before the jury is empaneled and not to post-trial jury deliberations, it has no bearing on this case. *Cf. Snyder*, 128 S. Ct. 1203 (holding that the trial court committed clear error in overruling defendant's objections to the prosecution's use of peremptory challenges due to improper racial bias at the voir dire stage). Defendant has demonstrated no perceivable error in Judge Phillips's actions following the charges of racism.

### 2.   Prosecutor's Improper "Testimony" and References to Things Not in Evidence

Defendant objects to the prosecutor's statement regarding the lack of fingerprints on firearms retrieved from the house where defendant was arrested and his reference to a telephone in the courtroom during his closing statement. Essentially, defendant is arguing prosecutorial misconduct. In determining whether a new trial is warranted due to alleged prosecutorial misconduct, the Court must look first to whether statements by the prosecutor were improper and then determine whether the impropriety was flagrant. *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). In determining the nature of impropriety, the Court considers,

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Cristini*, 526 F.3d at 889 (quoting *Carter*, 236 F.3d at 783).

## A. Statement Regarding Fingerprints

The first statement to which defendant objects occurred while defendant was cross-examining Task Force Officer Jerry Orr ("TFO Orr"). In response to defendant's questioning, TFO Orr stated that he did not know if any fingerprints were taken off the two firearms found in the home where defendant was arrested. [Trial Tr. Day 1, 120, Feb. 27, 2008.] TFO Orr further stated that based upon the amount of time it took officers to execute the search warrant, defendant would not have had time to wipe his fingerprints off of the two firearms. [Trial Tr. Day 1, 122.] During a break in questioning, prosecutor David Jennings interjected, "[C]an I state for the record that every firearm that will be introduced in this case was fingerprinted, no latent fingerprints were found on any of them and a report to that effect was sent to the defense in discovery months and months ago." [Trial Tr. Day 1, 123.] Though defendant did not object to the prosecutor's statement at trial, he now argues that it warrants a new trial.

The Court cannot conclude that this statement was improper. The prosecutor made the statement in order to save time during the pro se cross-examination in which defendant was questioning the witness on a subject about which he had no knowledge. The prosecutor's statement did not limit defendant's examination of the witness on the issue as defendant had already moved on to another topic before the prosecutor made his comment.

Additionally, the prosecutor's statement likely did not prejudice the defendant, but rather may have helped defendant. The prosecutor's statement indicated that defendant's fingerprints were not found on any of the firearms offered into evidence at trial, the point it

seems the defendant was trying to make during his cross-examination of the witness. Accordingly, the Court does not finding any prosecutorial misconduct warranting a new trial on the basis of the prosecutor's statement about the lack of fingerprint evidence.

## B. Statement Regarding Telephone

The second statement to which defendant objects is the prosecutor's reference to a phone in the courtroom. Defendant argues that in response to his assertion that the government failed to introduce the cell phone allegedly used in the conspiracy, the prosecutor pointed to a phone in the courtroom that had not been introduced into evidence and improperly testified, "There lays the phone."[2] A review of the transcript with the prosecutor's statement in context reveals that he was not suggesting that the phone in the courtroom was the phone used in the conspiracy. He stated,

> There lays a phone. Right there. What good does it do for you to look at that phone and know whether it is one of the people up here in the front of the courtroom that is on it, when it is being used. Nothing. Wouldn't the best way to know whether it was Janet Jackson or Rachel Kiser using that phone when it's being used is to listen to them? Of course.
>
> We don't have the phone? Yes, we do. Bubba Poston told you we have the phone. No, it wasn't found on his person. Why bring it in here and show it to you, when you have heard his voice on that phone for hours? The puppeteer is trying to manipulate you.

[Trial Tr. Opening and Closing Statements, 58, March 4, 2008.] The government states that the prosecutor was referring to the landline telephone on the courtroom deputies' desk. This statement is supported by the fact that both Janet Jackson and Rachel Kiser, to whom the

---

[2]The prosecutor actually said, "There lays a phone."

11

prosecutor referred, were both serving as courtroom deputies during the trial. Additionally, the prosecutor admitted that the government had not presented the cell phone used in the conspiracy. Accordingly, defendant's argument that the prosecutor improperly introduced the phone into evidence is without merit.

### 3. Improper Jury Argument by the Prosecutor

Defendant moves for a new trial on the ground that the prosecutor essentially engaged in name-calling when referring to defendant. Again the Court must consider whether statements by the prosecutor were improper and then determine whether the impropriety was flagrant. *Cristini*, 526 F.3d at 899 (quoting *Carter*, 236 F.3d at 783). The Court must do so by considering:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Cristini*, 526 F.3d at 889 (quoting *Carter*, 236 F.3d at 783); *see also Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988). Any alleged improper remarks by the prosecutor must be considered "within the context of the entire trial to determine whether [they] resulted in prejudicial error." *Cristini*, 526 F.3d at 901. Statements that are reasonable inferences drawn from the evidence and defendant's arguments are permissible. *See Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000).

In *Olsen*, the Sixth Circuit considered whether the prosecutor's deliberate remarks that repeatedly belittled the defendant by referring to him as a "deadbeat," "thief," "creep,"

and "liar" were improper. 843 F.2d at 930. The court determined that the comments did not deprive the defendant of the right to a fair trial because, "[w]hile not isolated, neither were they pervasive, and they may even have tended to create sympathy, rather than scorn." *Id.*; *see also Byrd*, 209 F.3d at 536 (finding that calling the defendant a predator did not deprive defendant of a fair trial).

Here defendant complains of the prosecutor's remarks that he was a "playboy," a "master manipulator," and a "puppeteer trying to manipulate the jury." He objects to the prosecutor's rhetorical question regarding why he did not work to earn a living. Defendant further complains that the prosecutor referred to the work of officers protecting the public and commented that it would not be a fair fight for officers if they encountered a defendant with an assault rifle like the one found in this case. The prosecutor suggested that the defendant was mocking the officers and sarcastically referred to defendant as a "brilliant, smart, drug trafficker who thinks he is bullet proof."

Most of these comments were reasonable inferences drawn from the evidence and thus were not improper. To the extent that they were improper, when viewed in light of the trial as a whole, the comments are no more prejudicial to defendant in relation to the crimes charged than the comments in *Olsen* that the defendant was a "deadbeat," "thief," "creep," and "liar" and *Byrd* that the defendant was a "predator." Though the comments seem to have been deliberate and not isolated, they were not extensive. Additionally, the evidence against defendant was substantial. Accordingly, a new trial is not warranted on the basis of these statements.

**III.    CONCLUSION**

In sum, defendant's motions being untimely, there being sufficient evidence for a reasonable jury to convict defendant of being a felon in possession of a firearm, there being no error by Judge Phillips in giving the jury supplemental instructions after indications by the jury of potential deadlock and racial bias, and there being no prosecutorial misconduct or improper statements warranting a new trial, defendant's Motion for Judgment of Acquittal [Doc. 322], Motion for New Trial [Doc. 323], and Supplemental Motion for Judgment of Acquittal or, in the Alternative, for New Trial [Doc. 374] are hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE